UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT**

I, Jeremy Reynolds, being duly sworn, state as follows:

**Introduction and Agent Background**

1. I am a Border Patrol Agent (BPA) of the United States Border Patrol (USBP), a component of Customs and Border Protection (CBP) within the Department of Homeland Security (DHS). I have been so employed since May 28, 2009. I have been assigned to the Swanton, Vermont Border Patrol Sector Intelligence Unit as a BPA – Intelligence (BPA-I) for approximately 3 years. As part of my duties, I have investigated dozens of international smuggling events, including events involving the smuggling of humans, controlled substances, currency, and other materials. I am familiar with techniques employed by smugglers operating along the international border between Canada and the United States in the Swanton Sector, and I am familiar with many land trails and lakes used by smuggling organizations to evade detection and apprehension by USBP agents. I have participated in interviews with foreign nationals who illegally entered the United States, both independently and as part of smuggling organizations used to assist aliens, drug smugglers, and foot guides in illegally entering the United States.

2. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of one electronic device further described below and in Attachment A (the "Subject Device"), which is in the custody of the U.S. Border Patrol Swanton Station at 104 Raven Drive in Swanton, Vermont, and to extract from the Subject Device the electronically stored information described in Attachment B.

i *Subject Device*: The Subject Device is a black Apple iPhone with a black

case.

3. The United States Border Patrol seized the Subject Device from Roselio Dos Santos ("DOS SANTOS") during his arrest on or about November 3, 2026, in the District of Vermont. Based on my training and experience, the Subject Device has been stored in a manner such that the data on it are likely to remain intact and in the same condition as they were at the time of the Subject Device's seizure. The applied-for warrant would authorize the forensic examination of the Subject Device for the purpose of seizing electronically stored data, particularly described in Attachment B.

4. As set forth herein, I submit that there is probable cause to search the Subject Device for evidence and instrumentalities of violation of 8 U.S.C. § 1324(a)(l)(A)(i), 8 U.S.C. § 1324(a)(l)(A)(ii), 8 U.S.C. § 1324(a)(l)(A)(v)(II), and 8 U.S.C. § 1325—specifically, bringing aliens to the United States at a place other than a designated port of entry, transportation of aliens in furtherance of their illegal entry, aiding and abetting those offenses, and illegal entry of aliens into the United States—collectively, the "Target Offenses."

5. The information contained in this affidavit is based upon my training and experience, my own investigation of this organization, and investigation by other law enforcement agents whose reports I have reviewed and with whom I have discussed the case. The following is either known to me personally or has been related to me by persons having direct knowledge of the events described below. This affidavit is meant to set forth probable cause that the violations occurred and that evidence of the violations will be found on the Subject Device; it does not necessarily include every fact known to law enforcement about the events described below. Unless otherwise specified, the statements described in the following paragraphs are related in sum and substance and are not meant to be direct quotations or complete descriptions.

## Probable Cause

### *Detection & Encounter*

6. On or about November 2, 2026, at approximately 11:45 p.m., Swanton Station Border Patrol Agents (BPAs) were notified that multiple subjects had been observed walking south across the U.S./Canada International Boundary near Ballard Road in Highgate, Vermont. These subjects were detected by a Border Patrol detection system in an area which I know, based on my training and experience, to be historically used as a corridor for unlawful entry into the United States. The location on Ballard Road where the subjects were detected has also been the site of numerous prior apprehensions by BPAs.

7. Later, at approximately 3:34 a.m. on November 3, 2026, Swanton Station BPAs were again notified that multiple subjects had been detected by a separate Border Patrol detection system located near Ballard Road in Highgate, Vermont.

8. As a result of these detection system activations, BPAs were in the area searching for the subjects. At approximately 7:40 a.m. on November 3, 2026, a Border Patrol Agent/Field Training Officer (BPA/FTO) and two Border Patrol Agent Trainees (BPA/Ts) were patrolling Ballard Road near the area where the subjects had been detected. The agents in the area observed a gray Honda CR-V bearing Massachusetts registration 5XPW 49 (the "Gray Honda") stop in the middle of the road and wait as two subjects ran from a wooded area and entered the Gray Honda.

9. Based on my training and experience, I know that Ballard Road is a rural, unpaved road that primarily receives local traffic. Vehicles bearing out of state license plates are uncommon in the area, and BPAs have previously made numerous apprehensions of smugglers using vehicles with out-of-state license plates near Ballard Road. Based on his training and experience, the BPA/FTO recognized the Gray Honda as being out of place. Based on the Gray Honda's apparent

presence out of place, the unusual circumstance of the subjects running from a wooded area and entering the Gray Honda, the proximity to the International Boundary, the recent detection system activations, and other facts, BPAs followed the Gray Honda and subsequently initiated a traffic stop on U.S. Route 7 near its intersection with Rheaume Road.

10. BPAs approached the vehicle, identified themselves, and questioned the occupants. The driver was identified as a citizen of Brazil and a lawful permanent resident of the United States. The passengers were identified as Guilherme Pinto and Roselio Dos Santos ("DOS SANTOS"), both citizens of Brazil. All three subjects were transported to the Swanton Border Patrol Station for processing.

11. A records check revealed that DOS SANTOS and Pinto possessed no legal status or authorization to enter or reside in the United States, and no record existed showing they had presented themselves for inspection at a designated Port of Entry.

12. At the station, BPAs from Swanton Sector Intelligence Unit interviewed Pinto and DOS SANTOS without the assistance of a phone translation service as both subjects claimed they understood the English language. Both subjects were read *Miranda*. In these separate interviews, DOS SANTOS and Pinto admitted to crossing the U.S./Canada International Boundary and claimed that they had hired a smuggler to guide them across. DOS SANTOS stated he paid $7,000 to "Nego Veio" to be crossed into the United States. Both Pinto and DOS SANTOS were found to possess Brazilian passports. DOS SANTOS was found to possess the Subject Device (Black iPhone).

13. DOS SANTOS consensually provided law enforcement limited review of the Subject Device during this interview. DOS SANTOS showed BPAs a WhatsApp conversation contained in the Subject Device between him and "Nego Veio." This conversation showed a pick-

up location on St Armand Road in Swanton, Vermont, a road which I know to cross Ballard Road at its southern terminus. DOS SANTOS was also sharing his live location with "Nego Veio." DOS SANTOS also showed agents a bank transfer of 30,000 Brazilian Reals to "Ricardo Dias Gomes," who DOS SANTOS claimed was a coordinator for the smuggling event.

***Criminal Complaint and Guilty Plea***

14. On or about November 4, 2026, BPA Reilly B. Donahue sought and received a criminal complaint charging DOS SANTOS with illegal entry or attempted illegal entry in violation of 8 U.S.C. §1325(a). *See United States v. Dos Santos, et al.*, 2:26-mj-00212-kjd, ECF Nos 1, 1-1. Later that day, DOS SANTOS pleaded guilty to this offense. *Id.*, ECF No. 6.

**Training and Experience Relevant to Human-Smuggling Cellular Phone Use**

15. In my experience investigating many human-smuggling cases, I have found that electronic devices such as cellular phones are commonly used to facilitate smuggling events in multiple ways. For example, participants use cellular phones to coordinate transportation in advance of the event and to guide migrants during the event across the border and to the waiting vehicle. In addition, smugglers utilize cellular devices to discuss and receive proof of payment from those being smuggled. These communications may include messages received by or sent from the devices, identification numbers and other information contained in their electronic memories, and the records of telephone numbers to which calls were placed and from which calls were received. The device may also contain GPS or similar location information indicating where the devices have traveled as well as photographs or videos. Further, individuals who commit these types of crimes together, or who know about crimes committed by their close associates, may communicate about those crimes through electronic communications that would be stored on a cellular telephone. The communications would be similar to those previously noted. Further

information stored in the memories of these communication devices could constitute evidence of criminal activity. With their cellular phones, those involved in illegal transportation activity often take photographs or videos of their illegal activities including maps, associates, and locations associated with their illegal activity. These photographs or videos may be stored in the memory of those cellular phones. Moreover, coordinators often track the migrants' and drivers' positions in real time during a smuggling event, and they exchange verbal and/or non-verbal communications over Wi-Fi and/or cellular networks to help them locate one another. These tasks are frequently necessary in the Swanton Sector generally, and the Swanton Station Area of Responsibility (AOR) specifically, because the remote and rural nature of the AOR makes it difficult to arrange meetings at precise times and to navigate to locations unlikely to appear on printed maps.

**Information Regarding Electronic Storage and Forensic Analysis**

16. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

17. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Subject Device was used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the Subject Device because:

1) Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

2) Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

3) A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

4) The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

5) Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

18. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Subject Device

consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the devices to human inspection in order to determine whether it is evidence described by the warrant.

**Conclusion and Request**

19. Based on the foregoing, I submit there is probable cause to believe that on or about November 2, 2026, Roselio Dos Santos, a citizen of Brazil, illegally entered the United States in the District of Vermont, in violation of 8 U.S.C. § 1325, with the assistance of a smuggling organization. Further, there is probable cause to believe that evidence of violations of 8 U.S.C. § 1324(a)(l)(A)(i), 8 U.S.C. § 1324(a)(l)(A)(ii), 8 U.S.C. § 1324(a)(l)(A)(v)(II), and 8 U.S.C. § 1325 will be located inside the Subject Device. I respectfully request the issuance of a search warrant authorizing the examination of the Subject Device, further described in Attachment A, and the seizure therefrom of the data described in Attachment B.

///

20. Because this warrant seeks only permission to examine the Subject Device, which is already in law enforcement's possession, the execution of this warrant would not involve the physical intrusion onto premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

Dated at Burlington, in the District of Vermont, this 12th day of November, 2026.

*Attested to by reliable electronic means*
Jeremy A. Reynolds
Border Patrol Agent - Intelligence
U.S. Border Patrol

Attested and sworn to before me by reliable electronic means on this 12th day of November, 2026.

HON. KEVIN J. DOYLE, Magistrate Judge
United States District Court
District of Vermont